IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 04-41 JJF |
| | : | |
| RICHARD HILL, | : | |
| | : | |
| Defendant. | : | |

Colm F. Connolly, Esquire, United States Attorney, and Beth
Moskow-Schnoll, Esquire, Assistant United States Attorney, UNITED
STATES ATTORNEY'S OFFICE, DISTRICT OF DELAWARE, Wilmington,
Delaware.
Attorneys for Plaintiff.

John S. Malik, Esquire, Wilmington, Delaware.
Attorney for Defendant.

**MEMORANDUM OPINION**

July _19_, 2005
Wilmington, Delaware



F I L E D

JUL 1 9 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

*Joseph J Farnan Jr.*

**Farnan, District Judge.**

Pending before the Court is Defendant's Motion To Suppress Evidence (D.I. 17).  For the reasons discussed, the Motion will be denied.

## I.    Procedural History

On March 21, 2004, Defendant Richard Hill was arrested and charged with (1) Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and (2) Carrying a Firearm in relation to a Federal Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)).  Hill was indicted on these charges, and entered pleas of not guilty.

On August 12, 2004, Hill filed the instant Motion To Suppress Evidence.  The Motion seeks to suppress any and all evidence seized or statements taken from Hill in connection with his arrest, the search of his person, and the search of his automobile on March 21, 2004.  The Court held an evidentiary hearing on the Motion on February 22, 2005.

## II.  Facts

On Friday, March 19, 2004, Detective Boyce of the Delaware State Police special investigations unit spoke with a confidential informant who had been arrested by the Delaware State Police financial crimes unit for forgery offenses.  The informant had no history of being a past proven reliable informant.  In exchange for favorable consideration of his

1

offenses, the informant agreed to share information he had about Defendant Richard Hill and drug trafficking in Delaware and Pennsylvania.  In addition to speaking about Hill, the informant took Detective Boyce to Sweet Bay Lane in New Castle, Delaware and identified Hill's house and car.  After the meeting, Detective Boyce researched official records and verified that the informant's representations were correct.  Detective Boyce also discovered that Hill's car at Sweet Bay Lane was registered to the address of 207 East 13th Street, Chester, Pennsylvania.

At 9:00 a.m. the next day, the informant met with Detective Clemons, a Delaware State Police detective assigned to the special investigations unit to conduct drug investigations.  Over the course of the approximately one-hour interview, the informant explained that he had regularly obtained cocaine from Hill over the past year and that Hill had a stash house in Chester, Pennsylvania.  Also, when shown a picture of Defendant, the informant identified the individual as Hill.

During the interview, the informant also described the routine by which he would obtain drugs from Hill.  First, the informant would call and request the cocaine by using "code language."  Hill would then respond with an arrival time.  Next, the informant would leave the money for the drugs in an unlocked truck in his driveway.  Finally, Hill would arrive, place the cocaine under the seat, and take the money.

After this explanation, the informant began to set up a transaction. First, the informant used his cell phone to call Hill's cell phone. The informant activated the speaker option on his phone so that Detective Clemons could listen to the conversation. Hill answered and the informant asked to see him "today." Hill replied, "No, tomorrow." No further information was exchanged and the call lasted less than five seconds. The informant then left the troop and agreed to return the next morning.

Following the meeting with the informant, Detective Clemons contacted Detective Regan of the Pennsylvania State Police to verify the informant's information. In turn, Detective Regan contacted Detective Skahill of the Pennsylvania State Police, who contacted Chester City police officer David Tyler. Officer Tyler confirmed that Hill was a cocaine trafficker in the Chester area and that Hill had a stash house at 207 East 13th Street in Chester, the home of Hill's mother and the address where Hill's car was registered. Officer Tyler based his conclusions on information given to him by a past proven reliable informant. Detective Skahill relayed this information to Detective Clemons.

On Sunday, March 21, 2004, Detective Clemons sent investigators to set up surveillance at Hill's Sweet Bay Lane address in Delaware. The informant arrived at the troop at 9:00 a.m. and again called Hill's cell phone. The informant said "two

o'clock," and Hill responded, "okay." Hill added that he would call on his way to Delaware. When Hill asked the informant what he would be doing that day, the informant responded that he would be playing golf. No further detail was discussed. Prior to the conversation, the informant explained that "two o'clock" meant two kilograms of cocaine and "okay" meant Hill would bring the cocaine to the informant's house. The informant also explained that price would not be discussed because both understood the price to be approximately $24,000 per kilogram.

Immediately after the phone call, the investigators at Sweet Bay Lane witnessed Hill leave his house, enter his car, and begin driving towards Chester. The surveillance followed Hill down Interstate 95, but lost him for approximately twenty minutes after Hill took one of the Chester exits. Towards the end of that twenty-minute period, Detective Skahill left the mobile surveillance to set up surveillance at 207 East 13th Street, where he saw Hill's car parked out front. Minutes later, Hill and Hill's cousin, Saresh Ravish, left the house and entered Hill's car. Detective Skahill testified that one of them was carrying a small backpack or bag. Detective Skahill and the other surveillance officers followed Hill back to Delaware.

While driving, Hill called the informant to say that he was on his way and would call when he was close. Detective Clemons listened to the conversation via the informant's speaker phone.

4

Later in the drive, Hill called again and said he was "three minutes out." One to two minutes later, the officers observed Hill drive into the informant's development. At that point, police cars emerged and wedged in Hill's vehicle. The officers removed Hill from his vehicle and arrested him. The arrest and pat-down revealed that Hill was carrying a gun and 130.2 grams of cocaine on his person. A subsequent search of Hill's car uncovered an additional 2 kilograms of cocaine.

## III. Parties' Contentions

By his motion, Hill contends that the evidence seized on March 21, 2004, should be suppressed because the Government lacked probable cause to make a warrantless arrest. Specifically, Hill contends that, for information from a confidential informant with no history of reliability to form the basis for probable cause, the information must be independently corroborated by the criminal activities of the suspect.

In response, the Government contends that it had probable cause to arrest Hill. Although the informant's tip was not corroborated by criminal activities of Hill, the Government contends that the totality of the circumstances indicated that Hill was distributing cocaine.

## IV.   Discussion

   A.   Whether Criminal Activity By A Suspect Is Required To
        Corroborate The Tip Of A Confidential Informant With No
        Prior History Of Reliability

"Law enforcement authorities do not need a warrant to arrest
an individual in a public place as long as they have probable
cause to believe that person has committed a felony." United
States v. Burton, 288 F.3d 91, 98 (3d Cir. 2002) (quoting United
States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992)); see also
United States v. Watson, 423 U.S. 411, 421 (1976).  Probable
cause exists where the facts and circumstances within the
arresting officer's knowledge are sufficient to lead a reasonable
person to believe that an offense has been committed.  McGlory,
968 F.2d at 342; see also Beck v. Ohio, 379 U.S. 89, 91 (1964).
Whether the police have probable cause for a warrantless arrest
is determined by the totality of the circumstances.  Gates, 462
U.S. at 230-32.

   Because the informant in this case had no history of
reliability, Hill contends that the officers needed to
corroborate the informant's information with independent criminal
activity by Hill.  Corroborating the details of an informant's
tip is an important step in establishing the veracity of an
informant.  See Illinois v. Gates, 462 U.S. 213, 241-42 (1983).
Such corroboration is particularly important when an informant
has no past history of reliability.  However, there is no

6

requirement that the corroboration can only come in the form of the criminal activities of the suspect. For example, in Illinois v. Gates, 462 U.S. 213, 241-42 (1983), the police received an anonymous, handwritten letter stating the details of a interstate drug purchase to be carried out by a husband and wife. The wife planned to drive to Florida to load a car with drugs, and the husband planned to fly to Florida to drive the car back home to Indiana. The police confirmed that the husband had plane tickets to Florida, boarded and arrived in Florida, took a taxi to a hotel registered to his wife, and the next morning, began driving towards Indiana--all non-criminal activities. The Supreme Court held that the police had probable cause to search the Defendants' home and car. In reaching this conclusion, the Supreme Court held that "innocent behavior frequently will provide the basis for a showing of probable cause.... [T]he relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." Id. at 243, n.13. Applying this precedent, the Court concludes that independent criminal activity by Hill was not required to corroborate the tip of the unknown informant, provided that the apparently innocent conduct by Hill was sufficient to establish probable cause for his arrest in light of the totality of the circumstances, including the informant's tip.

B.   <u>Whether There Was Probable Cause To Arrest Hill Based
     Upon The Totality Of The Circumstances</u>

Having concluded that criminal activity by Hill was not
required to corroborate the tip of the informant, the Court must
next determine whether, in light of the totality of the
circumstances, probable cause existed to arrest Hill.  Reviewing
the circumstances in this case, the Court concludes that a
reasonable officer would have believed that Hill was delivering
drugs to the informant.  In this regard, the Court notes that the
officers took several steps to independently ensure the veracity
of the informant.  Detective Boyce checked official records to
determine that the house and car at 143 Sweet Bay Lane belonged
to Hill, as the informant had represented.  Detective Boyce also
researched whether Hill had ties to the alleged "stash house" in
Chester, and found that Hill's car was registered to that
address.  Also, Detective Skahill verified through Officer Tyler
in Chester, Pennsylvania the informant's claim that Hill sold
drugs and used the house at 207 East 13th Street.

Additionally, all the information available to the police
indicated that Hill knew the informant, and that Hill was
delivering drugs to him.  The phone calls, Hill's immediate
departure towards Chester after the informant's request, Hill's
assurance that he was "three minutes out," and Hill's entrance
into the informant's development all confirmed that Hill was
engaging in a drug transaction as described by the informant.

8

This conclusion is supported by the following information known to the Government:  (1) the information from Officer Tyler's past proven reliable informant in Chester, Pennsylvania that Hill was a drug dealer and that 207 East 13th Street was his "stash house," (2) Detective Skahill's observation of Hill and his companion leaving that drug house with a small bag, (3) Detective Clemons' observation of the informant engaging Hill in a brief phone conversation which the informant explained in advance would involve code language for a cocaine request, and (4) Hill's immediate departure for and arrival at the 207 East 13th Street house after the informant's request.  Thus, while Hill's activities considered alone could be innocent, when viewed in the context of the Government's information and the totality of the circumstances, the Court concludes that Hill's activities were sufficiently suspicious to lead a reasonable police officer to conclude that a crime was being committed.  Therefore, the Court concludes that the Government had probable cause to arrest Hill, and Hill's Motion To Suppress (D.I. 17) will be denied.

**V.    Conclusion**

For the reasons discussed, the Court will deny Hill's Motion To Suppress (D.I. 17).

An appropriate order will be entered.

9